UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 06-CIV-21936  COOKE/BROWN

DR. DELANO BERRY,

    *Plaintiff*,

v.

FLORIDA INTERNATIONAL UNIVERSITY
(FIU) BOARD OF TRUSTEES (BOT),

    *Defendant*.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before me on Defendants' Motion for Summary Judgment [DE 72], filed September 24, 2007.  Plaintiff filed his Response [DE 99] on November 13, 2007.  Defendants' Reply [DE 111] was filed November 30, 2007.  For the reasons below, the motion is GRANTED.

**I.**    **STANDARD OF REVIEW**

Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Only the existence of a genuine issue of material fact, as opposed to a simple factual dispute, will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  No genuine issue of material fact exists when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II. BACKGROUND

Although the background of this case stretches back to 1989, the history relevant to this motion for summary judgment relates only to the circumstances surrounding the non-renewal of Dr. Delano Berry's employment contract, his subsequent termination, and eventual complaints of discrimination, both internally with the Defendant, Florida International University Board of Trustees (FIU), and with the Equal Employment Opportunity Commission (EEOC).  Dr. Berry (Plaintiff or "Berry"), was a faculty member at FIU from December 1989 until May 12, 2005. Berry was initially hired as a non-tenured instructor, but upon earning his Ph.D., he was placed on the tenure track.  Seven years later though, Plaintiff was taken off tenure track and given a course load that did not have a research and publication requirement.

In April 2003, new accreditation standards were adopted that required even non-tenure track faculty to research and publish.  Plaintiff, in June 2003, was advised of these new standards and was told he was not currently qualified, and would have to become qualified within two years to retain his position. Later that year, Plaintiff had a dispute over his summer salary.  This dispute apparently carried over into the summer of 2004, when on the first day of the summer session, Berry, scheduled to teach three classes, gave notice of his refusal to teach.  Further, Berry then sent an email to the students in the one class he taught that day, notifying them that he would not be teaching, and directing them to contact the administration.  Shortly thereafter, Defendant notified Berry that his office was being reassigned to the Biscayne Bay Campus.

On June 2, 2004, Plaintiff was informed, by letter, that his contract would not be renewed for the 2004-2005 academic year.  Pursuant to FIU policy, Berry was given a two-semester notice of non-renewal, whereby his employment would terminate on May 12, 2005.  On July 28, 2004, Plaintiff received notice that he would not have a teaching assignment for the 2004-2005 academic year, that he would be placed on "on-call" status, and concomitantly, would not be

assigned an office during that time period.  Plaintiff was paid his salary during this "terminal" contract period.

Plaintiff filed a complaint with FIU's Equal Opportunity Programs (EOP) office on August 26, 2004.  He claimed that the non-renewal of his contract was based on racial discrimination on the part of FIU.  Plaintiff's complaint was assigned to Nelson Perez, Assistant Director of the EOP.  On May 4, 2005, Plaintiff met with Mr. Perez.  At that meeting, Mr. Perez informed Plaintiff that the investigation had found discrimination, but that an official report would not be issued until the EOP director and FIU's legal counsel had reviewed the findings.  According to Berry, Mr. Perez also told him that he still had time to file an EEOC charge.  In December 2005, the EOP issued a final report upholding the non-renewal decision.  On February 10, 2006, Plaintiff filed an EEOC claim.

### III.   ANALYSIS

#### A.   Statute of Limitations

Plaintiff brought this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. §1981 and 42 U.S.C. §1981A.  Defendants' assert, *inter alia*, that Plaintiff's claims are time-barred under the filing requirements of Title VII.

A charge of discrimination must be filed with the EEOC within the time limits prescribed by 42 U.S.C. §2000e-5(e)(1)--here, 300 days--in order to maintain a Title VII action.  *King v. Auto, Truck, Indus. Parts and Supply, Inc.*, 21 F.Supp.2d 1370, 1377 (N.D. Fla. 1998) (citing *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 249 (5th Cir. 1980)).  "However, where a Plaintiff can show that an employment practice constitutes a continuing violation, [he] will avoid the harsh consequences of the limitations period."  *King*, 21 F.Supp.2d at 1377 (citation omitted). Additionally, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court [under Title VII], but a requirement that, like a statute of

limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

    1.  Continuing Violation

Plaintiff argues that the limitations period should commence at the date of termination, as opposed to the notification of non-renewal. To support this argument, Plaintiff claims that on July 28, 2004, shortly after he was given his notice of non-renewal and terminal contract, he was notified that he would not be assigned an office during his terminal year,[1] and that, therefore, every day he was displaced from his office, until the date of termination, was a continuing act of discrimination in violation of Title VII. In essence, Plaintiff alleges a discrete discriminatory act -- his displacement from his office. This displacement, lasting until Plaintiff's termination, was merely the continuing effect of that discrete act, and continuing effects of prior discrimination are not actionable once the charging period has lapsed. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112-13 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

"The continuing violation doctrine does not exist to give a second chance to an employee who allowed a legitimate Title VII claim to lapse." *Carter v. West Pub. Co.*, 225 F.3d 1258, 1264 (11th Cir. 2000) (quoting *Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793, 800 (11th Cir. 1988)). Specifically, the Supreme Court in *Delaware State College v. Ricks,* made clear that the limitations period commences to run at the time the employee is notified that he will be offered a "terminal" contract. 449 U.S. 250, 256-57 (1980). "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination. . . . In

---

[1] Defendant argues in its Reply [DE 111] that Plaintiff's allegation of a continuing violation is "disingenuous" as the issue of his displacement from his office was not part of his EEOC Charge and is not contained in the Amended Complaint. For purposes of the disposition of this Motion, I take Plaintiff's allegation of continuing violation to be sufficiently before the court.

order for the limitations period to commence with the date of discharge, [plaintiff] would have had to allege and prove that the manner in which employment was terminated differed discriminatorily from the manner in which [other similarly situated individuals were terminated.]" *Id.* at 257 (citations omitted). "In determining whether [Defendant's conduct] constitutes a continuing violation . . . we must distinguish between the 'present consequence of a one-time violation,' which does not extend the limitations period, and the 'continuation of the violation into the present,' which does." *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992).

In *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, the petitioner alleged that she was denied pay raises based on sex. 127 S.Ct. 2162, 2165-67 (2007). The decision to deny a pay raise was made outside the limitations period for filing an EEOC charge. *Id.* The petitioner argued that each paycheck she received during the EEOC charging period constituted a violation, because but-for the discriminatory denial of a pay raise, each check would have been higher. *Id.* at 2167. The Court found each paycheck to be a discrete act triggering a charging period, and therefore not a continuing violation, despite the fact that each paycheck was effected by prior discrimination. *Id.* at 2165-67, 77-78.

Here, the action of the Defendant, in displacing Plaintiff from his office during his terminal year, may well constitute a discriminatory act violative of Title VII. However, I find that even if the displacement violated Title VII, it was a discrete act of discrimination, actionable on its own, and not a continuing violation. *See Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993) ("[W]hether a discriminatory act constitutes a continuing violation of Title VII or a past violation with present effect is a finding of fact[.]"); *see also Prieto v. City of Miami Beach*, 190 F.Supp.2d 1340, 1348-49 (S.D.Fla. 2002) (finding no continuing violation and granting summary judgment). Each individual day Defendant was displaced from his office was

no more than the "consequence of a one-time violation," and did not constitute a discriminatory act for purposes of commencing the limitations period. *See Beavers*, 975 F.2d at 796; *Ledbetter*, 127 S.Ct. at 2169 ("A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination.").

Therefore, considering all evidence in the light most favorable to Plaintiff, the latest date at which the limitations period could have commenced was July 28, 2004, the date Plaintiff was notified that he would not be assigned an office during his terminal year.[2] With the limitations period commencing no later than July 28, 2004,[3] Plaintiff had until May 24, 2005, to file with the EEOC. Plaintiff did not file until February 10, 2006, well after the limitations period had run. Failure to file charges with the EEOC within the limitation period bars claims contained in the untimely charges. *See King,* 21 F.Supp.2d at 1377*; Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 662 (11th Cir. 1993).

Plaintiff has advanced two additional theories--equitable tolling and estoppel--that he argues push back the commencement of the limitations period to at least December 16, 2005, or estop the commencement entirely. I address these arguments and reject them in turn.

    2.       Equitable Tolling

Plaintiff argues that because it was not until December 16, 2005, that he became aware of the specific EEOC filing requirements, that the commencement period should be tolled until that

---

[2]Because here the summary judgment standard requires the Court to construe the evidence in the light most favorable to Plaintiff, I used this latter occurring discrete act to commence the limitations period. However, it should be noted that on Plaintiff's EEOC Charge sheet (Plaintiff's Ex. 22) he claimed only non-renewal as a discriminatory act, not the displacement from his office.

[3]Plaintiff's initial action based solely on his termination, would have started the limitations period on June 2, 2004, when he was notified of the non-renewal and terminal contract. Using this date as the commencement of the limitations period, Plaintiff was required to file with the EEOC by March 29, 2005.

date, making his February 10, 2006, filing timely.  This argument is unpersuasive.  "Under equitable tolling, Title VII's statute of limitations period does not start to run until a plaintiff knew or reasonably should have known that she was discriminated against.  A plaintiff who asserts the applicability of equitable tolling bears the burden of proving that it is appropriate." *Carter,* 225 F.3d at 1265 (citations omitted).  Plaintiff has failed to meet his burden.

At the time of his termination and displacement from his office, or shortly thereafter, the facts which would support Plaintiff's claim of discrimination were or should have been apparent to him.  Berry filed an internal complaint of discrimination with Defendant on August 26, 2004, less than one month after he had been notified that he would no longer have use of his office. There can be no dispute that, by the time he was informed of his displacement from his office, Plaintiff had sufficient facts to bring a complaint of discrimination (as indeed he did, internally), and the general knowledge of his right not to be discriminated against.  This combination forecloses the application of equitable tolling here.  As the Eleventh Circuit succinctly stated:

> Once an employee suspects that he may have been discriminated against on account of age and is also generally aware of his legal right to obtain redress for that wrong, he possesses sufficient knowledge to enable him to vindicate his rights, if he so desires. *When an employee is generally aware of his rights, ignorance of specific legal rights or failure to seek legal advice should not toll the 180-day notification period.*

*McClinton v. Alabama By-Prods. Corp.,* 743 F.2d 1483, 1486 (11th Cir. 1984) (emphasis added). *See also Ross,* 980 F.2d at 660-61 (citing *McClinton* and rejecting the application of equitable tolling where plaintiffs were aware that defendant was violating their right to be free of racial discrimination in their employment).  Therefore, I find that equitable tolling is inappropriate here, where Plaintiff knew or reasonably should have known that he was discriminated against, and was at least generally aware of his rights.

   3. Estoppel

Lastly, Plaintiff argues that the Defendants are estopped from claiming that the EEOC complaint was not timely. The requisites for applying equitable estoppel are as follows:

> The person against whom the estoppel is to apply must have actual or constructive knowledge of the facts and must have induced, through his words or conduct, another to rely upon the purported representation. The party seeking to assert estoppel must have had neither knowledge nor a reasonable means or opportunity of obtaining knowledge of the facts and must have relied upon the other party's representations to his detriment.

*Myers v. Fidelity & Cas. Co. of New York*, 759 F.2d 1542, 1547 n.9 (11th Cir. 1985) (quoting *Choat v. Rome Indus., Inc.*, 462 F.Supp. 728, 730 (N.D.Ga.1978)).

Plaintiff chiefly relies on the statements and claimed omissions of Mr. Perez at their May 4, 2005, meeting. According to Plaintiff, Mr. Perez indicated that he believed the EEOC limitations period did not commence until August 26, 2004, and further, that the investigation revealed discrimination had occurred, but the report was not final.

At first blush, Plaintiff's argument that these statements "induced or tricked" him into missing the filing deadline, seem adequately supported to create a genuine material issue of fact and thereby preclude summary judgment. *Young v. U.S.,* 535 U.S. 43, 50 (2002) ("This Court has permitted equitable tolling in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'") (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)). However, the facts, even as set forth by Plaintiff, fail to meet the standard.

At the time of the May 4, 2005, meeting between Berry and Mr. Perez, the Plaintiff's complaint dealt only with the non-renewal of the contract. Plaintiff had not filed any other complaint, or amended his initial complaint, to include a continuing violation claim by way of displacement from his office, as separate from his termination. As noted above, because there is

no equitable tolling, the limitations period for a claim based on the non-renewal of Plaintiff's contract commenced to run on June 2, 2004, and expired March 29, 2005. Therefore, any statements made by Mr. Perez, even if designed to induce or trick Plaintiff into not filing an EEOC charge, are irrelevant as they came after the deadline had passed. Additionally, Plaintiff's eventual filing date with the EEOC undermines his inducement argument. If Plaintiff believed and relied on Mr. Perez with regards to the time to file, he would have filed on or before June 22, 2005, 300 days after he filed his internal complaint; not February 10, 2006, 533 days from the filing of his internal complaint, and 618 days from his notice of non-renewal.

Furthermore, although the Court is troubled by Plaintiff's allegations that the Defendant has a history of issuing final reports finding discrimination claims to be unsubstantiated, where the initial investigation found the claims to be substantiated, Defendants' actions, even if true and improper, could not have induced or tricked Plaintiff to forego filing an EEOC complaint. The filing deadline had passed prior to Mr. Perez informing Berry that the investigation revealed discrimination. If anything, the facts demonstrate that Plaintiff should have been induced *to* file a complaint, if only to protect himself from what he saw as a practice designed to avoid liability.

Finally, the estoppel issue rests, in part, on Berry's knowledge of the EEOC filing deadlines. As discussed *supra*, Plaintiff had a general knowledge of his rights, and certainly had the ability and opportunity to obtain additional knowledge by contacting a lawyer or the EEOC directly.[4]

Accordingly, I find that there is no cause for applying estoppel to Defendants' claims that Plaintiff's EEOC complaint was untimely.

## IV.    CONCLUSION

---

[4]As Defendant points out, EEOC filing information is readily accessible on the EEOC's website.

Taking the facts in the light most favorable to the Plaintiff, based on this record, no reasonable trier of fact could find that Plaintiff's EEOC filing was timely.  As failure to file timely charges with the EEOC bars claims contained in the untimely charges, Plaintiff's claims of employment discrimination based on race are barred.  Accordingly, summary judgment is **GRANTED** in favor of Defendants.  A final judgment will issue by separate order.  The Clerk shall **CLOSE** this case.  All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of February 2008.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Stephen T. Brown*
*Counsel of Record*